**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM H. McKEITHEN, | No. EDCV 16-2224 SS |
|                 Plaintiff, | |
|     v. | |
| | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL[1], Acting Commissioner of Social Security, | |
|             Defendant. | |

**I.**

**INTRODUCTION**

Plaintiff William H. McKeithen ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security

---

[1]    Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for former Acting Commissioner Carolyn W. Colvin in this case.  See Fed. R. Civ. P. 25(d).

Administration (hereinafter the "Commissioner" of the "Agency") concluding that Plaintiff was disabled as of September 3, 2014, but was not disabled prior to that date. (Administrative Record ("AR") 34). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## II.

### PROCEDURAL HISTORY

In 2009, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB"), and an application for supplemental security income ("SSI"), alleging a disability onset date of September 1, 2008. (AR 107). The Agency initially denied both applications on January 27, 2010, and upon reconsideration on May 27, 2010. (AR 107). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on July 21, 2011. (AR 41-54). After the hearing, the ALJ determined that Plaintiff was not "disabled" under the Social Security Act and denied benefits. (AR 114). Plaintiff sought review by the Appeals Council, which later remanded the action back to the ALJ. (AR 118-22).

On remand, following a second hearing (AR 55-76), the ALJ again denied benefits. (AR 133). On appeal, the Appeals Council remanded the matter to the ALJ for a second time. (AR 139-44).

An ALJ held a third hearing. (AR 77-99). Following this hearing, the ALJ issued a partially favorable ruling. (AR 22-40). The ALJ concluded that Plaintiff was disabled as of September 3, 2014, but not from September 1, 2008 as Plaintiff contends. (AR 34). Plaintiff requested review of the partially favorable decision. (AR 18). The Appeals Council denied the request on August 22, 2016. (AR 1-7). Accordingly, Plaintiff filed this action to challenge the ALJ's findings regarding his disability onset date.

**III.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "The court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999)); accord Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir.

1989).  However, the court must "affirm the denial of disability

benefits if it is supported by substantial evidence and the

Commissioner applied the correct legal standards."  <u>Marci v.</u>

<u>Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996).


   "Substantial evidence is more than a scintilla, but less than

a preponderance."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.

1998) (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir.

1997)).  It is "relevant evidence which a reasonable person might

accept as adequate to support a conclusion."  <u>Id.</u>  To determine

whether substantial evidence supports a finding, the court must

"consider the record as a whole, weighing both evidence that

supports and evidence that detracts from the [Commissioner's]

conclusion."  <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>,

2 F.3d 953, 956 (9th Cir. 1993).  If the evidence could reasonably

support either affirming or reversing that conclusion, the court

may not substitute its judgment for that of the Commissioner.

<u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y of Health &</u>

<u>Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

\\

\\

\\

# IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from doing a substantial gainful activity, and that is expected to result in death or last for a continuous period of at least twelve months. Reddick, 157 F.3d at 721 (citing 42 U.S.C. § 423 (d) (1) (A)). The impairment must render the claimant incapable of performing any other substantial gainful employment in the national economy. Tackett, 180 F.3d at 1098 (citing 42 U.S.C. § 423 (d) (2) (A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § § 404.1520, 416.920.

(1) Is the claimant presently engaged in a substantial gainful activity? If yes, the claimant is found not disabled. If no, proceed to step two.

(2) Is the claimant's impairment severe? If no, the claimant is found not disabled. If yes, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If yes, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work?  If
   yes, the claimant is found not disabled.  If no, proceed
   to step five.

(5) Is the claimant able to do any other work?  If not, the
   claimant is found disabled.  If yes, the claimant is found
   not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,
262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R.
§§ 404.1520 (a) – (g) (1) & 416.920 (a) – (g) (1).


   The claimant has the burden of proof at steps one through four
and the Commissioner has the burden of proof at step five.
Bustamante, 262 F.3d at 953-54.  "Additionally, the ALJ has an
affirmative duty to assist the claimant in developing the record
at every step of the inquiry."  Id. at 954.  If, at step four,
the claimant meets his burden of establishing an inability to
perform past work, the Commissioner must show that the claimant
can perform some other work that exists in "significant numbers"
in the national economy, taking into account the claimant's
residual functional capacity ("RFC"), age, education, and work
experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at
721; 20 C.F.R. §§ 404.1520 (g) (1), 416.920 (g) (1).  The
Commissioner may do so by the testimony of a vocational expert
("VE") or by reference to the Medical-Vocational Guidelines

appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional and non-exertional limitations, the Grids are inapplicable and thus the ALJ must take VE testimony. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

Plaintiff contends that the ALJ failed to give proper weight to the treating physicians' opinions in determining Plaintiff's disability onset date. Plaintiff also argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective testimony. The Court agrees with Plaintiff's contentions and REMANDS this action to the Agency for further proceedings.

Plaintiff contends that the ALJ erred by failing to give proper weight to the physical functional assessments of treating doctors Harold Luke, M.D., and Wilson Gomer, M.D., and the examining doctor Robert Steinberg, M.D. (Plaintiff's Memorandum In Support of the Complaint ("Pl. MSO") at 11-20). Plaintiff further argues that had the ALJ properly credited the treating and examining physicians' opinions, Plaintiff's disability onset date would have

been September 1, 2008, not September 3, 2014.  See Pl. MSO at 20.

The Court agrees that remand is required, as discussed below.

**V.**

**DISCUSSION**

**A.    The ALJ Failed To Provide Specific And Legitimate Reasons To Reject The Treating Physicians' Opinions**

As a matter of law, the greatest weight is accorded to the claimant's treating physician.  Ghanim v. Golvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014).  The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual.  Id.  Further, as a general rule, when a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  See Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts.  Trevizo, 871 F.3d at 675.

When a treating or an examining physician's opinion is contradicted by another doctor, it may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial

evidence in the record. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007.

Here, Consultative Examiner Azizollah Karamalou, M.D., contradicted the assessments of treating doctors Luke and Gomer, and examining consultative physician Robert Steinberg. (Compare AR 619 with AR 522-28, 570-76, and 549-51). Dr. Luke's questionnaire indicates his first date of treatment for Plaintiff's pulmonary condition was June 2, 2004. (AR 522). Dr. Steinberg viewed records dating back to September 24, 2008 and concluded that "the earliest date that the patient's symptoms and limitations apply is 2009." (AR 542-551). Because of the conflicting opinions, the ALJ must provide "specific and legitimate" reasons for rejecting the opinions of Doctors Luke, Gomer, and Steinberg.

**1. Treating Physician Harold Luke, M.D.**

Dr. Harold Luke, M.D., practices pulmonary medicine in Redlands and Grand Terrace, California. (See e.g., AR 516, 521, 528). Dr. Luke is affiliated with Redlands Community Hospital and the Quality Medical Corporation's Happy Care Clinic ("Quality Clinic"). (See e.g., AR 514, 528). In a summary report drafted on June 30, 2011, Dr. Luke noted that Plaintiff has received treatment from Quality

Clinic since 2004. (AR 515). Further, in 2009, Plaintiff presented to Dr. Luke at Quality Clinic after suffering from an episode of severe shortness and breath and chest pain. (AR 515). Chest x-rays demonstrated Plaintiff maintained only forty-six percent of his lung capacity. (AR 515) Further, Dr. Luke assessed that Plaintiff suffered from emphysema and diabetes. (AR 515).

Dr. Luke assessed plaintiff on several occasions between 2009 and 2011. (See AR 497-528). During a visit in 2010, Dr. Luke diagnosed plaintiff with COPD, chronic bronchitis, obesity, bipolar disorder, hypertension, and diabetes. (AR 505). Dr. Luke recommended that Plaintiff refrain from doing physical light work. (AR 505). He further recommended that Plaintiff engage in "walking exercise daily after meals for 20 minutes one way." (AR 505).

On September 25 2011, Dr. Luke completed a Pulmonary Impairment Questionnaire. (AR 522-28). Dr. Luke determined that, in an eight-hour workday, Plaintiff could only sit, stand and walk for up to one hour each day. (AR 525). Further, Plaintiff was limited to lifting and carrying up to 10 pounds frequently, and up to 20 pounds occasionally. (AR 525). Dr. Luke also found that Plaintiff's reported level of pain, a five on a one-to-ten scale, would "frequently" interfere with his concentration and attention. (AR 527).

The ALJ incorporated the previous ALJ's decision and rejected Dr. Luke's medical assessment of Plaintiff. (AR 30). The previous ALJ rejected Dr. Luke's assessment for several reasons. (AR 130-31). The ALJ found that Dr. Luke made a contradictory assessment of Plaintiff's physical capabilities. (AR 130). The ALJ noted that Dr. Luke determined in 2011 that Plaintiff could not stand or walk for more than one hour in an eight-hour workday, despite his 2010 recommendation that Plaintiff engage in recreational walking for exercise up to three times daily and for twenty minutes at a time. (AR 130). In addition, the ALJ concluded that Dr. Luke rendered his 2011 assessment only as "a series of checked boxes that were marked without any specific clinical or objective support." (AR 130-31). Finally, the ALJ found Dr. Luke never administered any type of pulmonary function study when assessing Plaintiff. (AR 131).

The Court finds that the ALJ's reasons for rejecting Dr. Luke's assessments are not specific and legitimate. The ALJ's initial determination that Dr. Luke made a contradictory assessment of Plaintiff's physical capabilities is unfounded. Dr. Luke's physical functional assessment of Plaintiff in 2011 was an assessment of what Plaintiff could do at that particular time. (AR 505). His recommendation in 2010 that Plaintiff engage in "recreational" walking for exercise was expressly worded as a goal

for Plaintiff. (AR 505). For example, he recommended that Plaintiff endeavor to walk "daily after meals for 20 minutes on way . . . if possible to condition the heart." (AR 505). The words "if possible" suggest that this was a goal. Accordingly, the ALJ's reason for rejecting Dr. Luke's opinion because the doctor's findings were "contradictory" is not supported by the record.

Furthermore, the ALJ's rejection of Dr. Luke's assessment because of a "series of checked boxes that were marked without any specific clinical or objective support" is not supported by the record. (AR 130-31). Contrary to the ALJ's finding, Dr. Luke supplied handwritten responses and comments to nine of the twenty-one questions on the assessment form. (AR 522-28). Moreover, Dr. Luke submitted chart notes reflecting his own findings in support of his responses, he referenced a chest x-ray demonstrating Plaintiff's diminished lung capacity, and Dr. Luke detailed other medical findings he made. (AR 515-16). See Garrison, 759 F.3d at 1014 n.17 (emphasizing that more than just the face of a "check-box" form should be considered when considering its weight, including notes and charts attached in support of a questionnaire's responses.). Thus, the record does not support the ALJ's rejection of Dr. Luke's opinion on the basis that the assessment was a "series

of checked boxes that were marked without any specific clinical or objective support."

In addition, the ALJ erred by stating that Dr. Luke never administered any type of pulmonary function study. Dr. Luke administered and referenced a chest x-ray showing Plaintiff's significantly reduced lung capacity. (AR 515). Thus, Court finds that the ALJ failed to provide specific and legitimate reasons to reject Dr. Luke's opinions.

## 2. Treating Physician Wilson Gomer

Primary care physician, Dr. Wilson Gomer, M.D., treated Plaintiff from July 2012 to October 2012. (AR 570). On October 26, 2012, Dr. Gomer completed a Multiple Impairment Questionnaire. (AR 570-77). He concluded that Plaintiff suffers from COPD, sleep apnea, depression, hypertension, chest pain, diabetes, emphysema, hyperlipidemia, shortness of breath, and heart disease. (AR 570-71). Based on his treatment, Dr. Gomer opined that that Plaintiff could not sit, stand or walk for more than one hour in an eight-hour workday. (AR 572). Further, he opined that Plaintiff could occasionally lift and carry up to 10 pounds. (AR 573). Moreover, based on Plaintiff's reported pain level, Dr. Gomer concluded that

Plaintiff's experience of pain was enough to "constantly" interfere with Plaintiff's attention and concentration. (AR 575).

The ALJ rejected Dr. Gomer's physical assessment based on four reasons. Initially, the ALJ characterized Dr. Gomer's assessment as "vague and overly broad objective findings." (AR 31). The ALJ pointed to the lack of a pulmonary function study, chest x-rays, MRI studies, or other diagnostic tools in the treatment record. (AR 31). Next, the ALJ concluded that Dr. Gomer's assessment consists of "a series of checked boxes on a preprinted form solicited by the claimant's representative." (AR 31). The ALJ also found Dr. Gomer's assessment contradicted Dr. Luke's. (AR 31). The ALJ noted that Dr. Gomer concluded that Plaintiff could not sit, stand, or walk more than one hour in an eight-hour workday, but Dr. Luke also recommended that Plaintiff walk for exercise up to three times a day and for twenty minutes at a time. (AR 31). Finally, the ALJ rejected Dr. Gomer's assessment because he responded "No" to the question, "Have you substituted medications in an attempt to produce less symptomology or relieve side effects?" (AR 31-32). The ALJ found that numerous medications could be used to control Plaintiff's condition. (AR 31-32).

The Court finds that the ALJ's reasons for rejecting the treating physician Gomer's assessments are not specific and

14

legitimate.    First, Dr. Gomer's assessments are improperly characterized as "vague findings."  The findings are specific and clear.   Moreover, the ALJ did not explain what further studies should have been done.  Thus, "vague findings" was not a legitimate reason to reject Dr. Gomer's report.

Second, Dr. Gomer's responses do not display a "series of mindlessly checked boxes."  Dr. Gomer submitted pages of charts and notes in support of his assessment. (AR 529-36, 562-68, 597-615, 664-98).   Moreover, he supplied handwritten responses to fourteen of the twenty-nine questions on the first questionnaire form (AR 570-76), and he submitted handwritten responses to ten out of fourteen responses on the most recent questionnaire.   (AR 646-50).  Thus, Dr. Gomer's responses were not just checked boxes.

Third, Dr. Gomer's assessment of Plaintiff's ability to walk and stand in an eight-hour workday does not contradict Dr. Luke's "recommendation" that he walk for twenty minutes at a time up to three times a day to condition his heart.  (AR 549).  As stated before, Dr. Luke's recommendation was expressly worded as a goal rather than an assessment of what Plaintiff could presently do. (AR 505).   For this reason, Dr. Gomer's assessment did not contradict Dr. Luke's.

Finally, the ALJ's decision to reject Dr. Gomer's assessment because he responded "No" to a question on his assessment form about providing substitute medication to Plaintiff is not a specific and legitimate reason. (AR 574). Dr. Gomer adjusted Plaintiff's diabetes medication and made several additions to the medications in his regimen. (AR 698). Further, the ALJ is a layperson, not a doctor. An ALJ cannot challenge a medical doctor's treatment choices and a physician's awareness of the scope of treatments available to his patient. See Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975). Accordingly, the Court finds that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Gomer's assessment.

### 3. Examining Consultative Physician Robert Steinberg, M.D.

Plaintiff's counsel retained Dr. Robert Steinberg, M.D., to assess Plaintiff. (AR 538-52). Dr. Steinberg is an Internal and Integrative Medicine specialist. (AR 538). On September 27, 2012, after examining Plaintiff and reviewing medical records dating back to 2009, Dr. Steinberg provided a detailed report on Plaintiff's limitations. (AR 538-52). Dr. Steinberg concluded that in an eight-hour day, Plaintiff could sit only for about two hours, and stand/walk for only about thirty minutes to one hour. (AR 549). He also opined that Plaintiff can lift and carry up to 10 pounds

16

frequently and up to 20 pounds occasionally. (AR 549). Dr. Steinberg found that Plaintiff's pain symptoms would likely increase in a competitive work environment. (AR 550). Additionally, Dr. Steinberg advised that Plaintiff would need unscheduled rest-breaks at unpredictable intervals during the eight-hour work day, for twenty minutes a time at every hour. (AR. 550). He determined that the earliest date of Plaintiff's symptoms and limitations was in 2009. (AR 551).

The ALJ rejected examining doctor Steinberg's assessment on three grounds. First, the ALJ asserted that a non-examining medical advisor Ostrow found that the record supporting Dr. Steinberg's assessment contained insufficient "objective findings" to endorse the restrictive standing and walking limitations and unscheduled rest breaks recommended by Dr. Steinberg. (AR 30-31). Second, the ALJ concluded that Plaintiff's reported pain level, a five on a one-to-ten scale, is intrinsically at odds with Dr. Steinberg's opinion that the pain would "frequently" interfere with Plaintiff's attention and concentration. (AR 31). Lastly, the ALJ rejected Dr. Steinberg's assessment based on the ALJ's determination that Plaintiff's lungs were essentially clear on examination. (AR 31)

The Court finds that the ALJ's reasons for rejecting examining doctor Steinberg's assessment are not specific and legitimate. As a matter of law, a non-examining medical advisor's opinion will not suffice to override a treating or examining and consultative physician's opinion. See Garrison, 759 F.3d at 1012; Lester v. Chater, 81 F.3d 821, 830 (1995) ("The ALJ's primary reasons for rejecting [the treating physicians'] opinions were that they conflicted with the testimony of a non-examining medical advisor. In so doing, the ALJ committed an error of law."); see also Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) ("[T]he non-examining physician's conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician."). Accordingly, because Dr. Steinberg is Plaintiff's examining doctor, the non-examining medical advisor Ostrow's opinion, by itself, may not stand to override Dr. Steinberg's assessment.

Next, the ALJ had no factual basis to determine that Plaintiff's reported pain level as a five on a one-to-ten scale is intrinsically at odds with Dr. Steinberg's opinion that the pain would "frequently" interfere with Plaintiff's attention and concentration. (AR 559). As a factual matter, the Court agrees with Plaintiff that there is nothing inconsistent between a mid-

range level of pain and an inference that such a pain would "frequently" interfere with an individual's attention and concentration.

Finally, the ALJ's finding that Plaintiff's lungs were essentially clear on examination lacks merit. Dr. Steinberg found decreased breath sounds in all lung fields in Plaintiff, with a prolonged expiratory phase. (AR 544). Furthermore, Dr. Steinberg's findings are consistent with the opinions of treating physicians Luke and Gomer, who similarly determined that Plaintiff suffered from wheezing (AR 523, 533), poor breath sounds (AR 505), and diminished breathing. (AR 515).

Thus, the Court finds the ALJ failed to give specific and legitimate reasons for rejecting examining consultative doctor Steinberg's assessment.

**B.  The ALJ Failed To Provide Clear And Convincing Reasons To Reject Plaintiff's Credibility**

Plaintiff also challenges the ALJ's credibility determination. Plaintiff contends that the ALJ failed to provide clear and convincing reasons supported by substantial evidence in the record for discrediting his testimony.  (Pl. MSO at 20-22).

The Court agrees and remands this action for further proceedings consistent with this decision.

The ALJ presented several reasons for discounting Plaintiff's credibility. The ALJ initially concluded that Plaintiff was not credible because the chest pain he experienced while trimming his hedges subsided when he discontinued that activity. (AR 32). The ALJ also found that Plaintiff's testimony lacked credibility because Plaintiff failed to stop smoking after being medically advised to do so. (AR 32). Consequently, the ALJ held that Plaintiff's failure to quit smoking evinced his failure to follow medical advice, thus undermining his credibility. (AR 32). For the reasons stated below, the Court concludes that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's credibility.

**1. Chest Pain Testimony**

Plaintiff challenges the ALJ's decision to reject his credibility based on his alleged "inconsistent" testimony about Plaintiff's chest pain. (Pl. MSO at 20). In particular, the ALJ discredited Plaintiff's testimony regarding his chest pain because the "chest pain ceased after [Plaintiff] stopped trimming" the hedges. (AR 32).

The ALJ may use "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements." <u>Ghanim</u>, 763 F.3d at 1163 (quoting <u>Smolen</u>, 80 F.3d at 1284). As a general rule, the Ninth Circuit "do[es] not consider a cursory finding that a single line of testimony is 'equivocal' sufficient to constitute substantial evidence." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 884 (9th Cir. 2006). In <u>Robbins</u>, the Ninth Circuit held that an ALJ failed to provide clear and convincing reasons to discount a claimant's credibility when relying on a "single line" of inconsistent testimony regarding alcohol use. <u>Id.</u>

Here, as in <u>Robbins</u>, the ALJ erroneously relied on a single limited discrepancy to reject Plaintiff's credibility. Although the ALJ's finding that Plaintiff is capable of light physical exertion may conflict with Plaintiff's claim that he endured pain while trimming his hedges, that inconsistency alone is not sufficient to wholly reject Plaintiff's credibility. Thus, the Court agrees that this rationale fails to provide a clear and convincing reason to reject Plaintiff's credibility.

## 2. Plaintiff's Failure To Quit Smoking

Plaintiff challenges the ALJ's decision to reject his credibility based on his failure to follow medical advice to quit smoking. (Pl. MSO at 21). "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to ... follow a prescribed course of treatment." Trevizo, 871 F.3d at 679 (citations omitted). Failure to assert a reason for not following treatment "can cast doubt on the sincerity of the claimant's pain testimony." Id.

As a general rule, "in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful, the approach to credibility makes little sense." Orn, 495 F.3d at 638. For example, in Orn, the Ninth Circuit, held that a claimant's failure to follow a medically advised treatment for treating his obesity was not sufficient to discount the claimant's credibility. Id. Therefore, the court found that the ALJ erred in rejecting claimant's credibility on this ground. Id.

Additionally, the Court notes that the Seventh Circuit in Shramek v Apfel followed several steps (omitted by the ALJ here) before denying benefits for a failure to follow medical advice to

quit smoking.   Before denying benefits because of a failure to follow medical advice, the Seventh Circuit found that an inquiry must be conducted into the circumstances surrounding the failure, and a determination must be made as to whether following the treatment advice would have restored the person's ability to work or sufficiently improve his condition.   Shramek v. Apfel, 226 F.3d 809, 812-13 (7th Cir. 2000) (cited in Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, Plaintiff's failure to follow medical advice to quit smoking is similar the plaintiff in Orn, who failed to follow medical advice to lose weight.   In neither situation is the failure to follow medical advice, on the facts of the case, a clear and convincing reason to reject the claimant's subjective testimony. Furthermore, the ALJ here failed to consider whether quitting smoking would have restored Plaintiff's ability to work or sufficiently improved his health condition to allow him to work. Without such an inquiry, Plaintiff's failure to quit smoking alone cannot constitute a convincing reason to reject his credibility. Therefore, the Court agrees that Plaintiff's failure to follow the medical advice to quit smoking, under these facts, does not provide a clear and convincing reason to reject his credibility.

**VI.**

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[1] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. The Agency must reevaluate Plaintiff's disability onset date in light of the findings made in this Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  November 13, 2017

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[1] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

24

NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE**